[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 95.]

HICKS, APPELLANT, *v.* WESTINGHOUSE MATERIALS COMPANY; NLO, INC. ET AL., APPELLEES.

[Cite as *Hicks v. Westinghouse Materials Co*., 1997-Ohio-227.]

*Trial procedure—Jury selection—Racial discrimination—Exercise of peremptory challenge against prospective African-American juror in workers' compensation suit does not violate constitutional law, when—Application of standard articulated in Batson v. Kentucky.*

(No. 95-2314—Submitted November 12, 1996—Decided April 2, 1997.)

APPEAL from the Court of Appeals for Hamilton County, No. C-94CA0094.

————————————

{¶ 1} Diane T. Hicks, appellant, filed a claim in 1987 seeking participation in the State Insurance Fund for the alleged radiation-induced death of her husband, Larry Hicks, while he was employed at appellee NLO, Inc., a contractor that operated the U.S. Department of Energy's uranium processing facility at Fernald, Ohio. Appellant asserted that an accident at the Fernald plant exposed her husband to radiation, causing him to develop acute interstitial myocarditis—an inflammation of the heart muscle—from which he died. The Industrial Commission of Ohio denied the claim in 1989; pursuant to R.C. 4123.519, Hicks appealed to the Hamilton County Court of Common Pleas.

{¶ 2} When the voir-dire phase of the trial commenced, the prospective jury pool consisted of thirty-four persons. Voir dire continued until a jury of eight was selected. Two of those jurors, like Hicks, were African American. The trial proceeded, and the jury ultimately rendered a verdict against Hicks, denying her claim and finding in favor of the defendants-appellees.

{¶ 3} During the course of voir dire, Hicks objected to the appellees' use of a peremptory challenge against prospective juror Donna Adams, also an African

American.  Appellant claimed that appellees were solely motivated by racial bias in exercising the peremptory strike.  Following a request by the trial judge for an explanation as to why appellees wished to exclude Adams, counsel for the appellees responded:

"MR. HAWKINS:  Yeah.  Miss Adams is—Miss Adams is an unemployed woman who has a very limited educational background.  This is a case that involves some technical issues and medical testimony.

"We're concerned by the answers that we received yesterday that those issues require a certain level of education, a certain level of sophistication that may not be present in this particular juror.  And that's why we are asking peremptorily that she be taken off the panel.  And this is directed ---- this is not a racial issue and it has nothing to do with race.  It is an issue that deals with what we think to be her duty to function as a juror in this case."

{¶ 4} Shortly thereafter, appellees' counsel added:

"MR. HAWKINS:  But we're making a determination based upon what we think is their ability to understand issues, watch their reactions to questions.  And it's not just questions that you ask; it's the reaction to other questions that are asked and their reactions to that."

{¶ 5} Counsel for both parties then engaged the trial court in a discussion about the qualifications of Adams relative to others in the jury pool.  Near the end of that exchange, the trial judge stated:

"THE COURT:  And probably it—probably it should be that the choice you're making is not based on racial, that—"

{¶ 6} Appellees' counsel then reasserted that their peremptory challenge was not based on racial grounds, referring again to their view that based on responses to questions posed earlier in voir dire, not all jurors had the same ability to fully understand the issues of the case.  Following a brief discussion about whether appellees' counsel had rebutted the claim pursuant to *Edmonson v.*

2

*Leesville Concrete Co.* (1992), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660, the trial judge stated:

"THE COURT: Well, we'll accept the statement as complying with the Federal Court rule and—"

{¶ 7} Appellees' counsel then suggested the judge had misspoken. The judge elaborated:

"THE COURT: I know. Whatever you said. Whatever citation you've got there, the Supreme Court decision."

{¶ 8} The trial court then excused Adams.

{¶ 9} In its decision denying appellant's motion for a new trial after the jury rendered a verdict for the defendants-appellees, the trial court explained its position on appellant's claim of racial discrimination:

"Every effort was made to select a fair and impartial jury. Whatever may have been in the minds of counsel for either party, the Court was not indulging in an effort to impanel a racially imbalanced jury.

"***

"Donna Adams, aside from her want of normal secondary education, was, in the Court's opinion, not capable of following the path of evidence in the case before the Court and was strongly desirous of being elsewhere than in the courtroom."

{¶ 10} Hicks timely appealed the judgment of the trial court to the Court of Appeals for Hamilton County, arguing, *inter alia*, that appellees' exercise of a peremptory challenge removing Adams from the venire constituted racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The court of appeals disagreed and affirmed the trial court's judgment. The appellate court stated that the trial court had "misunderstood" the procedure for resolving a claim of racial discrimination in jury selection, as outlined in *Batson v. Kentucky* (1986), 476 U.S. 79, 96-98, 106

S.Ct. 1712, 1723-1724, 90 L.Ed.2d 69, 87-89. The court of appeals employed its own review of the record and held that because appellees asserted valid, race-neutral reasons for exercising their peremptory challenge, the trial court's decision was not clearly erroneous.

{¶ 11} This cause is now before us pursuant to the allowance of a discretionary appeal.

_____

*Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Louise M. Roselle* and *Paul M. DeMarco,* for appellant.

*Frost & Jacobs, William H. Hawkins II* and *Jack B. Harrison,* for appellee NLO, Inc.

*Betty D. Montgomery,* Attorney General, and *William D. Haders,* Assistant Attorney General, for appellees Administrator, Bureau of Workers' Compensation, and Industrial Commission of Ohio.

_____

**MOYER C.J.**

{¶ 12} The question presented in this appeal is whether the trial court conducted a proper constitutional analysis as outlined in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, in determining that appellees were not racially motivated in excluding an African American from the jury through the use of a peremptory challenge. Our review of the law and record compels us to conclude that the trial judge properly applied the standard as articulated in *Batson*. Accordingly, we cannot say that the decision of the trial court to grant appellees' peremptory strike was clearly erroneous. We therefore affirm the judgment of the court of appeals and hold that the peremptory challenge exercised by appellees did not violate constitutional law.

**I**

**{¶ 13}** The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. *Id*. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting ""those to discriminate who are of a mind to discriminate."" *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference or inferences of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See *Batson* at 96-97,106 S.Ct. at 1723, 90 L.Ed.2d at 88.

**{¶ 14}** Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation "related to the particular case to be tried." *Id*. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation "need not rise to the level justifying exercise of a challenge for cause." *Id*. at 97, 106 S.Ct. at 1723, 90 L.Ed. 2d at 88. The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race. *Hernandez v. New York* (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408.

**{¶ 15}** Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem* (1995), 514 U.S. ___, ___, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. *Id.* at ___, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d at 409.

**II**

**{¶ 16}** Initially we observe that the *Batson* framework is designed to ensure a juror-selection *process* free from racial discrimination. No litigant can claim entitlement to a jury which includes members of a particular racial group. See, generally, *Batson*, 476 U.S. at 85-86, 106 S.Ct. at 1717, 90 L.Ed.2d at 80. *Batson* and its progeny prohibit racial discrimination in jury selection, not only to comply with constitutional requirements but also to protect the integrity of the judicial process. This constitutional mandate exists in both criminal and civil actions. See *Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660. Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means. Therefore, in analyzing the trial court's actions here, we must determine whether the trial judge's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process.

**{¶ 17}** Hicks contends that the trial judge failed to properly apply

**{¶ 18}** *Batson*, and thereby abused his discretion by sustaining the motion to peremptorily strike Donna Adams. We disagree. Given the record and applicable constitutional law, we can only conclude that the trial court's ruling, while imperfect in form, was constitutionally sufficient. We qualify this conclusion

6

with caution. Trial judges must exercise considerable care in reviewing a claim of racial discrimination in jury selection. A judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test when racial discrimination has been alleged in opposition to a peremptory challenge. Here, we conclude from a careful reading of the record that the trial court understood and properly applied the *Batson* test.

{¶ 19} Appellant's prima-facie case was tenuous. Following appellees' request to strike Adams, counsel for the appellant stated:

"MR. GRUNES: Your honor, before Miss Adams is excused, we'd like to make a motion directed at peremptory challenges of black jurors by the defendants."

{¶ 20} We assume, *arguendo*, that counsel's general assertion sought to specifically contest Adams's removal. Applying *Batson*, it is questionable that this statement, without more, raises an inference of racially discriminatory jury selection. Similarly, the relevant circumstances surrounding this proceeding appear largely devoid of any meaningful events that might have supported an inference of discriminatory purpose. Adams was the first, and only, African American peremptorily struck from the jury. There was no "pattern of strikes" against African American jurors, nor did appellees' counsel make any statements during voir dire that were reflective of a discriminatory motive. See *Batson* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Nonetheless, the trial judge directed appellees' counsel to explain their reasons for the peremptory strike, thereby accepting appellant's prima-facie argument. See *Hernandez v. New York*, 500 U.S. at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405.

{¶ 21} In response, appellees' counsel reasoned that Adams, in their view, was incapable of understanding the complexities of the case, based on her responses to questions posed during voir dire. Counsel also reflected concern about her educational background, and questioned her basic ability to function as a juror.

Appellees denied any racial motive whatsoever. Following this explanation, the trial judge engaged counsel for both parties in a lengthy exchange regarding Adams's qualifications relative to those of others in the venire. At that point, the trial judge accepted that appellees' counsel had articulated a "neutral explanation related to the particular case ***," *Batson* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88, and began to determine if appellant had established purposeful discrimination pursuant to the last component of the *Batson* framework.

{¶ 22} Hicks asserts that appellees employed a "double standard" in their treatment of Caucasian and African-American venire members throughout voir dire. Appellant asserts further that the educational level of other venire members challenged by appellees demonstrates that the stated concern about Adams' educational background was merely pretextual. Our analysis of the jury selection process does not produce the same conclusion.

{¶ 23} We are convinced that the trial judge could have properly found that appellees had put forth a race-neutral explanation for excluding Adams. Appellees stated a concern about Adams's ability to understand the complexities of the case. Counsel based this view upon Adams's responses to questions posed during voir dire and her educational background. It is reasonable to conclude that given the nature of the case, appellees had a legitimate concern about Adams's ability to understand the case, a view reinforced by the trial judge's statement in ruling on appellant's motion for a new trial that Adams was "not capable of following the path of evidence in the case before the Court and was strongly desirous of being elsewhere than in the courtroom." Appellees repeatedly denied that the issue was race-based, and made no facially discriminatory statements in offering their explanation.

{¶ 24} To the contrary, appellees were primarily concerned with ensuring an impartial, yet reasonably sophisticated, jury. Three of the seven venire members challenged by the appellees and removed for cause by the court either knew the

appellant or had some connection with the Fernald plant. The remaining four venire members spoke negatively of Fernald, or simply stated their inability to be impartial. While all seven members in fact had more education than Adams, it is not unreasonable to conclude that the trial court, in making the ultimate decision to dismiss these venire members, simply questioned their ability to perform impartially on the jury. In seeking to root out any hint of bias, these dismissals contradict appellant's portrayal of the trial judge as deficient in managing the voir-dire process. While it is true that appellees' stated concerns about these venire members did not resemble their concerns related to Adams, peremptory challenges do not require explanations sufficient to that justification necessary to uphold a challenge for cause. *Batson* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

{¶ 25} In addition, a review of appellees' peremptory challenges, and the final composition of the jury, demonstrates that appellees' stated opposition to Adams was neutral and related to the case to be tried. *Id.* at 97-98, 106 S.Ct. at 1723-1724, 90 L.Ed.2d at 88-89. Appellees' use of another peremptory challenge to exclude venire member Corbett, who had approximately the same education as did Adams, reflected appellees' desire to ensure a jury with the greatest amount of education and sophistication from those left in the prospective jury pool. All final eight jurors possessed greater educational qualifications than Adams or Corbett. Six jurors had at least completed high school, while two had attended college; all indicated current or previous employment, in contrast to Adams. Although one alternate juror had only completed tenth grade, both parties had exhausted all peremptory challenges at the time this juror was seated. Thus, appellees had no choice but to accept her presence as an alternate member of the panel. Moreover, appellees did not challenge the two African-American jurors eventually seated at any point during voir dire. It is simply not plausible that appellees employed a racial "double standard" during voir dire; rather, appellees sought to empanel a jury able to understand all aspects of a potentially complex case. We cannot therefore

reach the conclusion that appellees' explanation for their strike against Adams was pretextual.

{¶ 26} We now consider the trial judge's ultimate conclusion that appellees did not evince discriminatory intent in excluding Adams. Once the trial court began to question both parties about Adams's qualifications subsequent to appellees' proffered explanation, the judge then had the responsibility to determine if the appellant had established purposeful discrimination. See *Batson* at 97-98, 106 S.Ct. at 1723-1724, 90 L.Ed.2d at 88-89. We believe the trial court conducted a sufficient inquiry. Nothing in the exchange leading to the trial judge's acceptance of the "Federal Court rule" can reasonably persuade us that the trial court was improperly applying *Batson*. The judge required counsel for both parties to explain their positions. He stated his skepticism about the presence of racial motive by saying that "probably it should be that the choice you're making is not based on racial" (was interrupted by counsel), and then ultimately granted the peremptory challenge.

{¶ 27} Review of a *Batson* claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court. See *Batson* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21. Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and in the absence of clear error, we will not reverse the trial court's determination. *Hernandez v. New York*, 500 U.S. at 369, 111 S.Ct. at 1871, 114 L.Ed.2d at 412; *State v. Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d at 1314. Trial judges, in supervising voir dire, are best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility. See *Batson* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21.

{¶ 28} We therefore do not agree with the court of appeals that the trial court "misunderstood" *Batson*. While less than artful, the trial court conducted a proper *Batson* inquiry. We do not sit as arbiters of eloquence. Our review is limited to determining from the record whether the trial court applied *Batson* in a sufficient

manner. The trial court fulfilled its basic constitutional duty; appellees' peremptory strike did not unconstitutionally compromise the integrity of the jury selection process in any way.

{¶ 29} A trial court's resolution of a *Batson* claim is not clearly erroneous where there are two permissible views of the evidence. *Hernandez v. New York*, 500 U.S. at 369, 111 S.Ct. at 1871, 114 L.Ed. 2d at 412. In light of the explanation for Adams' dismissal offered by the appellees, coupled with the noteworthy absence of a reasonably indicative pattern of an intent to racially discriminate, the trial court could have permissibly concluded that appellees' strike was not race-based. Accordingly, the trial court's decision to allow appellees' peremptory challenge was not clearly erroneous.

{¶ 30} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

————————————