Please note:
We have sua sponte removed this case from the accelerated calendar.
On June 9, 1997, Frank Rice was in downtown Cincinnati when he encountered a person known to him as "Slim," a man with whom he had briefly spoken a few times in the past. Rice spoke with Slim, and the two decided to go to Slim's apartment in Avondale. (The reason for going to the apartment is not reflected in the record.) The two then rode to Avondale in the same car.
Rice and Slim entered an apartment building and went downstairs to a basement area. Another man then came down the stairs, pointed a gun at Rice, and demanded money, and Slim began searching Rice's pockets. Rice resisted and began to struggle with Slim. During the struggle, the gunman shot Rice in the buttocks. Slim then took Rice's money and fled. Rice, who survived, later identified defendant-appellant Corey A. James as Slim. James and the gunman were charged with aggravated robbery, robbery, and accompanying gun specifications.
At trial, James presented an alibi defense and argued that the case was one of mistaken identity. He claimed he was at an arcade when the crime occurred. (The gunman, Alfonso Stevenson, also presented an alibi, but this appeal does not involve him.)
The jury rejected James's story and found him guilty of aggravated robbery and robbery, but not guilty of the gun specifications. The court sentenced him to three years' incarceration.
James now appeals, asserting two assignments of error. (James refers to his assignments as "Issues Presented for Review." We refer to them as assignments.) In his first assignment, he asserts that the court erred in overruling Batson objections that he made at trial after the state used peremptory challenges to remove two African-American prospective jurors from the jury panel. To prevail on a Batson objection, a party opposing a peremptory challenge must demonstrate a prima facie case of discrimination: the party must show that the removed juror is a member of a cognizable racial group and that there is an inference of discrimination by the striking party. If a prima facie case exists, the striking party must articulate a race-neutral explanation. That explanation need not rise to the level of a challenge for cause. Last, the trial court must determine whether the party opposing the peremptory challenge has proved purposeful discrimination.[1] The court's determination will be given great deference and will not be disturbed on appeal unless it is clearly erroneous.[2]
Here, regarding the first Batson objection, the state offered the following reasons for exercising the peremptory challenge: the prospective juror (i) knew two prominent defense attorneys, (ii) lived in the area where the robbery occurred, and (iii) stated that she might have known one of the defense witnesses. Regarding the second Batson objection, the state explained that its peremptory challenge was used because the prospective juror worked for the Equal Employment Opportunity Commission, which the state felt might be too liberal, and because the state felt that the prospective juror was a "little bit hesitant" in answering its questions.
We hold that it was not clearly erroneous for the trial court to overrule the Batson objections. For the peremptory challenge that was used on the first African-American prospective juror, the state offered three reasons that did not involve race. The state had a legitimate reason to have these concerns, especially in relation to the fact that the prospective juror might have known a defense witness. As for the second peremptory challenge, the state's reasons were less convincing than those offered for the first. But, based on the record before us and on the fact that the trial court was in a better position than we are to determine the "hesitancy" of the prospective juror, we cannot say that the trial court's decision to overrule the Batson objection was clearly erroneous.[3] Also, we note that the state explained that its witnesses, including Rice and the police officer who investigated the crime, were all African Americans. We believe this offers further support for the state's position that its peremptory challenges were not related to race. Because the state offered a valid race-neutral justification, we do not have to address whether James asserted a prima facie case of discrimination.[4] James's first assignment is overruled.
In James's second assignment, he alleges that there was insufficient evidence to sustain his convictions and that the convictions were against the manifest weight of the evidence. To reverse a conviction for insufficient evidence, an appellate court, reviewing the evidence in the light most favorable to the prosecution, must conclude that no reasonable trier of fact could have found the defendant guilty.[5] In reviewing a manifest-weight issue, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice so that the conviction must be reversed.[6]
James points to certain conflicting testimony from various witnesses regarding the incident, Slim's appearance, Slim's clothing, and Slim's getaway car. But, considering that Rice identified James as Slim—an identification that was done with certainty, based on Rice's previous encounters with James and on his opportunity to observe James before the robbery—we conclude that there was sufficient evidence to convict James and that his convictions were not against the manifest weight of the evidence. When James's case is weighed against the compelling evidence presented by the state, we cannot say that the jury clearly lost its way. (James also argues that Rice's identification of him was based on an unnecessarily suggestive photo array. But James made the same argument earlier in a motion to suppress, which was overruled by the trial court and which is not appealed here. The legitimacy of the array was an issue for the jury to decide. Despite possible suggestiveness of the array, the jury concluded that there was enough evidence to convict James, and we cannot say that the jury erred in making that determination.)
Therefore, the judgment of the trial court is affirmed.
The Court, believing that there were reasonable grounds for this appeal, allows no penalty. Costs shall be taxed in compliance with App.R. 24. A copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, which shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
 Sundermann and Winkler, JJ., concur.
[1] Hicks v. Westinghouse Materials Co. (1997), 78 Ohio St.3d 95,98-99, 676 N.E.2d 872, 876.
[2] Hernandez v. New York (1991), 500 U.S. 352, 364-365,111 S.Ct. 1859, 1868-1869.
[3] See, also, State v. Bannerman (Mar. 4, 1997), Franklin App. No. 96APA06-791, unreported (peremptory challenge based on fact that the prospective juror was a member of the American Civil Liberties Union).
[4] Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866 ("[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot").
[5] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, paragraph two of the syllabus.
[6] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.