OPINION
Appellant Brad Uhl, Individually and as Administrator of the Estate of Robert H. Uhl, deceased, appeals a judgment of the Richland County Common Pleas Court dismissing his complaint against appellees Mid-Ohio Heart Clinic, Michael Amalfitano, D.O., following jury trial:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED WHEN IT REFUSED TO CONDUCT A BATSON HEARING BEFORE PERMITTING THE APPELLEE TO EXCUSE, PURSUANT TO PEREMPTORY CHALLENGES, THE ONLY AFRICAN-AMERICAN VENIRE MEMBERS.
ASSIGNMENT OF ERROR NO. 2
 THE APPELLEE FAILED TO ESTABLISH A RACE-NEUTRAL BASIS FOR STRIKING THE ONLY TWO AFRICAN-AMERICAN VENIRE MEMBERS, VIOLATING THE CONSTITUTIONAL RIGHTS OF THE APPELLANT AND THE EXCLUDED JURORS.
Appellant brought the instant medical negligence and wrongful death case against appellee Dr. Michael Amalfitano, a cardiologist, and his clinic, Mid-Ohio Heart Clinic. The case proceeded to jury trial.
During voir dire, appellant objected to counsel for appellees using peremptory challenges to remove the only two African-Americans in the venire. When the objection was raised, the following colloquy occurred between the court and counsel for both parties:
THE COURT: Aren't you talking about a criminal case?
 MR. DAVID SHROYER: Matson [sic] and Wise, I believe, is a criminal and civil case. It's a constitution right to a jury trial of your peers.
 THE COURT: Yeah, but that's related to a black defendant having black people taken off the jury.
 MR. DAVID SHROYER: That was the context of the Supreme Court case. That was a criminal case that was decided by the Supreme Court. I believe that's been also indicated to — I haven't researched it.
 MR. ENDERS: Well, I'd be happy to respond that on behalf of the defendants, number one, I don't think that Matson [sic] applies to the facts of this case, because obviously neither of the plaintiffs or any of the family members or relatives are African American, nor is the defendant or any member of his group . . .
As to my particular peremptory challenges and the reasons therefore, I'm doing this because the Court has asked me to. Number one, Mr. Haynes demonstrated a fair amount of confusion on two or three of the questions I asked of him and also appeared to have difficulty hearing. I decided that my client probably could not get a fair trial, because he probably could not hear all of it or could not understand it, because it's going to be fairly medically complex.
As to the second individual, Mr. Black, I made a decision, based on my years as a trial attorney, that he seemed to be leaning towards the plaintiff based upon a number of the answers he gave and that he seemed inclined to want to award damages to the plaintiff and he would be so inclined even if liability wasn't clearly established. So I thought that he was probably not a good juror as for the defense.
* * *
 MR. DAVID SHROYER: I don't think that's a good enough basis, because I didn't hear anything that would indicate that. Without a more articulable basis, I don't think he should be excused.
 THE COURT: Unless you can suggest to me prejudice to your client, he can do whatever he pleases.
* * *
 THE COURT: What's the alleged prejudice to your client?
 MR. DAVID SHROYER: Of a jury trial of a fair and impartial people made up of the community.
 THE COURT: That's what we have. What is your — what's the claim of prejudice to your client?
 MR. DAVID SHROYER: The claim is not having to exclude a racial — based on race, it is not a fair trial. It's not a fair jury.
 THE COURT: Unless you can come up with something better than that to indicate possible prejudice because of the people that are left on the jury, peremptory challenges are expendable at the intention of the party, not the direction of the other party.
* * *
 THE COURT: In this case — the ruling is in this case, absence some showing of some prejudice to the opposing party, the Court can use no discipline on the defendant and require him to make choices he would otherwise make.
* * *
Tr. 139-142
At the end of voir dire, counsel for appellant renewed his objection to appellee's use of peremptory challenges to remove the only two African-Americans from the panel. The court again overruled the objection, stating that in a criminal case, they would have had a "much more serious discussion about it." Tr. 188.
Following trial, the jury returned a verdict in favor of appellees.
 I
In his first assignment of error, appellant argues that the court erred in the manner in which it considered his claim.
In Batson v. Kentucky (1986), 476 U.S. 79, the United States Supreme Court held that use of peremptory challenges to eliminate potential jurors based on race violates the Equal Protection Clause of the United States Constitution. In Powers v. Ohio (1991), 499 U.S. 400, the Court extended the holding in Batson, finding that a criminal defendant, regardless of his or her race, may object to a prosecutor's racially-based exclusion of persons from the jury. In Edmonson v.Leesville Concrete Company (1991), 500 U.S. 614, the Court further extended the holding of Batson to use of peremptory challenges for race-related reasons in a civil case.
In Batson, the United States Supreme Court set forth a three-part test to determine whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima facie case of racial discrimination in the use of the strike. 476 U.S. at 96. The trial court should consider all relevant circumstances in determining whether a prima facie case exists, including statements made by counsel exercising the challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present.Id. at 96-97.
Assuming a prima facie case exists, the striking party must then articulate a race-neutral explanation related to the particular case to be tried. Id. at 98. The explanation need not rise to the level justifying exercise of a challenge for cause. Id. at 97. The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike, and intent is present if the explanation is merely a pretext for excluding the juror on the basis of race. Hernandez v. New York (1991), 500 U.S. 352, 363. Once the proponent explains the challenge, whether or not ordered to do so by the court, and the trial court rules on the ultimate issue, the issue of whether a prima facie case was established becomes moot. Id. at 359.
Last, the court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. The critical question is whether the race-neutral explanation should be believed.Id. at 375. At this stage, review of the claim hinges largely on issues of credibility, and a reviewing court is ordinarily to defer to the findings of the trial court. Batson, supra, at 98. Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and in the absence of clear error, the trial court's determination should not be reversed. Hernandez, supra, 369.
In analyzing the trial court's actions in considering a Batson claim, a reviewing court must determine whether the trial court's analysis of the contested strike was sufficient to preserve a constitutionally permissible jury selection process. Hicks v. Westinghouse MaterialsCompany (1997), 78 Ohio St.3d 95, 99. Trial judges must exercise considerable care in reviewing a claim of racial discrimination in jury selection. Id. A judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition of a peremptory challenge.Id.
In the instant case, we note at the outset that appellant's primafacie case was tenuous. Appellant pointed to no factors in support of his claim, other than that counsel for appellees had exercised peremptory challenges against the only two African-American members of the panel. However, once counsel for appellees came forward with a race-neutral explanation, the issue of prima facie case became moot.
It is apparent from the colloquy between counsel and the court, cited earlier in this opinion, that the court did not apply the Batson test to the challenge. The court repeatedly focused on the issue of prejudice, and required a showing that appellant was prejudiced by the jury as ultimately constituted. The court did not make a finding concerning the credibility of the proffered explanation, and therefore we cannot conduct an appropriate review of whether the trial court abused its discretion in accepting the race-neutral explanation and finding no discrimination.
In Cunningham v. St. Alexis Hospital Medical Center (2001),143 Ohio App.3d 353, the court interrupted counsel while he was attempting to explain his reasons for exercising his peremptory challenges, summarily overruling the Batson challenge. The Court of Appeals for Cuyahoga County concluded that while it was unlikely that the appellee was attempting to strike the juror on the basis of her race, the court's abbreviated consideration of the challenge was grossly insufficient to indicate that the judge understood and applied the precise Batson test, to adequately preserve the appellant's right to a constitutionally permissible jury-selection process. Id. at 362. Similarly, in a Stark County case, the Court of Appeals for this district found that while defense counsel very inarticulately stated an objection without citing any case law, essentially leaving the court adrift, the court erred in failing to conduct a proper Batson inquiry, and make a determination concerning purposeful discrimination. State v. Heropulos
(July 19, 1999), Stark App. No. 1998CA00254, unreported.
In the instant case, the court failed to apply the Batson test, and did not make a finding concerning purposeful discrimination following appellees' statement of race-neutral reasons for exercising the challenges. Accordingly, we vacate the judgment and remand the matter to the trial court to conduct a Batson hearing. Should the trial court conclude a race-neutral explanation exists, it should reenter judgment for the appellees. If, on the other hand, it concludes the proffered race-neutral explanation was merely pretextual, it should order a new trial.
The first assignment of error is sustained.
 II
In his second assignment of error, appellant argues that appellees' race-neutral reasons for striking the only two African-American venire members were insufficient. As the court did not make a finding concerning the credibility of these explanations, we cannot review this claim. For the reasons stated in assignment of error I, this assignment of error is premature.
The second assignment of error is overruled.
The judgment of the Richland County Common Pleas Court is vacated and the matter remanded to that court for further proceedings in accordance with this opinion and the law.
By HOFFMAN, P.J., and EDWARDS, J., concur GWIN, J. dissents.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is vacated. The cause is remanded to that court for further proceeding according to our opinion and the law. Costs to appellees.