OPINION
{¶ 1} D'Ali Brown appeals from his conviction for two counts of felonious assault after a jury trial in Montgomery County Common Pleas Court.
 {¶ 2} In a single assignment of error, Brown asserts the trial court erred in denying his Batson challenge to the prosecution's peremptory challenge of the only African-American juror on his jury venire. He also contends the trial court should have granted his motion for a mistrial because of the prosecutor's conduct.
 {¶ 3} At the beginning of the voir dire examination, Kenneth Marcellus indicated to the court that he knew the defendant's attorney, Risa McCray. Marcellus indicated he knew Ms. McCray because she was part of an organization that he "facilitates." (Tr. 10). Marcellus indicated that he had just met Ms. McCray and he did not believe his acquaintance with Ms. McCray would impact his ability to render a verdict upon the facts presented. (Tr. 10).
 {¶ 4} Later in the voir dire, Mr. Marcellus told the prosecutor that he only met Ms. McCray once through the Salem Business Association. Mr. Marcellus was asked by the prosecutor if he believed he could be fair and impartial but there was no audible response in the record. (Tr. 76).
 {¶ 5} During examination by Ms. McCray, Marcellus indicated he met Ms. McCray six months earlier at the Salem Business Association meeting when he presented a report on behalf of the Priority Board.
 {¶ 6} Ms. McCray further inquired of Mr. Marcellus:
 {¶ 7} "MS. McCRAY: And prior to that, you had never seen me?
 {¶ 8} "MR. MARCELLUS: Never.
 {¶ 9} "MS. McCRAY: Okay. Now, evidently I didn't impress you. You didn't even know I was a lawyer.
 {¶ 10} "MR. MARCELLUS: Well, you were very articulate, so I figured that you — you had to have done something or that was just your nature.
 {¶ 11} "MS. McCRAY: Now, if chosen on this Jury, you might be the only minority on the Jury. Would that be a problem for you?
 {¶ 12} "MR. MARCELLUS: Uh . . . no.
 {¶ 13} "MS. McCRAY: You also would have to decide the, uh . . . Verdict of the black male. Would that be a problem for you?
 {¶ 14} "MR. MARCELLUS: No."
 {¶ 15} At the conclusion of the voir dire examination, the prosecutor exercised a peremptory challenge to exclude Mr. Marcellus from further service as a juror. Ms. McCray then objected to the prosecutor's challenge of the only black juror on the prospective jury. She noted the only thing he has said would bring him close to being kicked off is that he met me at a meeting. She noted that Marcellus didn't even know she was an attorney. (Tr. 190). The prosecutor then made the following "race neutral" explanation for exercising a peremptory challenge to excuse Marcellus.
 {¶ 16} "MS. HIETT: Your Honor, wh — first of all, — not only the fact, its beside the fact, that he knows Ms. McCray, but he indicated that he remembered her, he found her to be very articulate.
 {¶ 17} "I was watching him `cause actually I was gonna keep him on until she started speaking and he was obviously very impressed by her. He was, uh . . . — just his entire body language was very attentive, uh . . . more so — well, I mean, and not to be comparing, but more so than he even was to me.
 {¶ 18} "And it was just the fact that he was — he said he was very — she was a very articulate person, he was very — and he appeared to be very impressed by her. He knew her and he remembered her, and if, you know, he remembered her from a one chance encounter from months ago, he remembers her.
 {¶ 19} "And that was the primary reason why I think that he's gonna be more easily found to be more pro her side than the State's side." (Tr. 192).
 {¶ 20} The prosecutor further explained that she would have excused Mr. Marcellus if he had been white. She explained that she asked that Mr. Marcellus be excused because of his "reaction" to defense counsel, the fact he knows her, remembered her, found her to be articulate, and was impressed by her. (Tr. 194).
 {¶ 21} The trial court then found that the defendant had made out a prima facie case of discrimination under Batson. The court found the prosecutor's explanation for exercising the challenge to Marcellus's service was "race neutral" and was not the product of purposeful discrimination. The court then excused Mr. Marcellus from further service as a juror. (Tr. 196). Ms. McCray then noted her objection to the trial court's ruling and moved for a mistrial. (Tr. 197).
 {¶ 22} Brown asserts that the reason given by the prosecutor was fanciful and pretextual. He contends that the answers given by Marcellus display no bias towards defense counsel and he also notes that Marcellus assured the court his chance meeting with defense counsel on the prior occasion would not affect his ability to be fair and impartial as a juror. Brown asserts that the court erred in accepting the prosecutor's "race neutral" explanation and in excusing Marcellus from jury service. He contends the trial court's ruling denied him a fair trial.
 {¶ 23} The State argues that there was no inherent discriminatory intent shown by the prosecutor's explanation. The State argues that the trial court was thus required to accept the explanation given by her as being race neutral. Further, the State argues there was no evidence in this record indicating the prosecution's challenge was exercised with an intent to engage in purposeful discrimination.
 {¶ 24} In Batson v. Kentucky (1986), 476 U.S. 80, the United States Supreme Court held that a state denies a black defendant equal protection when it puts him on trial before a jury from which members of his race have been purposefully excluded. Batson created a three-part test for determining whether a prosecutor's use of a peremptory challenge is racially motivated:
 {¶ 25} "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination."Batson, supra, at 82.
 {¶ 26} In order to establish a prima-facie case of discrimination, the defendant must show that he or she is a member of a cognizable racial group and that the peremptory challenge was used to remove a member of the defendant's race from the venire. Batson at 96. But, see, Powers v. Ohio (1991), 499 U.S. 400, holding that a defendant has standing to object to race-based exclusions of jurors through peremptory challenges whether or not defendant and excluded jurors share the same race. The defendant must then point to facts and other relevant circumstances that are sufficient to raise an inference that the prosecutor used its peremptory challenge specifically to exclude the prospective juror on account of his race. Finally, the trial court must "consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present." Batson at 96-97.
 {¶ 27} Assuming that the defendant demonstrates a prima-facie case of discrimination, the prosecutor must then articulate a race-neutral explanation for the peremptory challenge "related to the particular case to be tried." Batson at 98. Although a simple affirmation of general good faith will not suffice, the prosecutor's explanation "need not rise to the level justifying exercise of a challenge for cause." Id. at 97. In fact, the prosecutor's explanation for striking the prospective juror is not required to be "persuasive, or even plausible. `At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem (1995), 514 U.S. 765, 768, 115 S.Ct. 1769,131 L.Ed.2d 834, quoting Hernandez, 500 U.S. at 360. See, also, State v.Gowdy (2000), 88 Ohio St.3d 387, 392, 727 N.E.2d 579.
 {¶ 28} Finally, in determining whether the defendant has proved purposeful discrimination, the trial court must decide whether the prosecutor's race-neutral explanation is credible, or instead is a "pretext" for unconstitutional discrimination. Hernandez at 363. However, because this stage of the analysis rests largely on the trial court's evaluation of the prosecutor's credibility, an appellate court is required to give the trial court's findings great deference. Hicks v.Westinghouse Materials Co., (1997), 78 Ohio St.3d 95 at 102. ("Review of a Batson claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court [regarding whether purposeful discrimination has been proved].") As explained in Hernandez:
 {¶ 29} "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding `largely turns on evaluation of credibility.' [476 U.S. at 98, fn. 21]. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies `peculiarly within a trial court's province.' Wainwright v. Witt (1985),469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841]."
 {¶ 30} The State concedes for purposes of this appeal that the defendant made out a prima facie case of racial discrimination. It is clear, however, that to make out a prima facie case, the defendant must show something more than the fact the prosecutor removed a juror who is a member of a cognizable racial group. The defendant must show other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire men from the petit jury "on account of their race." In this case the relevant circumstance was that the removal of Mr. Marcellus resulted in leaving only white jurors on the jury. A trial judge could infer from this circumstance that the defendant had established a prima facie case of purposeful discrimination.
 {¶ 31} In Hernandez v. New York (1991), 500 U.S. 352, the Supreme Court held the explanation for the peremptory challenge of a Spanish-speaking Latino will be deemed race-neutral unless discriminatory intent is inherent in the prosecutor's explanation. The prosecutor explained he excluded two Latinos because both had looked away from him and been hesitant when stating they would not consider their own translations of testimony by Spanish speaking witnesses, but rather would follow the court interpreter's version. In affirming the New York state court's rejection of defendant's Batson claim, Justice Kennedy reiterated the great deference that must be accorded a trial court's finding on the ultimate question of discriminatory intent. He noted that that finding represents a fact of the sort accorded great deference on appeal, regardless of whether it relates to a state-court decision and whether it relates to a constitutional issue. Id. at 365-366.
 {¶ 32} In Purkett v. Elem, 514 U.S. 765, the Court held that a prosecutor's explanation that two black prospective jurors had long, unkempt hair and a beard, accepted by the trial judge as nonpretextual reasons striking them, sufficient to comply with Batson:
 {¶ 33} "Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. `At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in theprosecutor's explanation, the reason offered will be deemed raceneutral.'
 {¶ 34} "It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge maychoose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Emphasis added).
 {¶ 35} There is no discriminatory intent inherent in the prosecutor's explanation that she excused Mr. Marcellus because he knew defense counsel, found her articulate, and because Marcellus' body language suggested he was more impressed with defense counsel.
 {¶ 36} Lastly, we must accord some deference to the trial court's finding that the prosecutor's explanation was persuasive and consequently the defendant had failed to carry his burden of proving that the prosecutor had engaged in purposeful discrimination.
 {¶ 37} Most legal observers believe Hernandez and Purkett have seriously watered down Batson. See, Leonard L. Cavise, The Batson Doctrine: The Supreme Court's Utter Failure to Meet the Challenge of Discrimination in Jury Selection, 1999 Wis. L. Rev. 500. "When the Supreme Court decided Batson * * * many feared peremptory challenges would become an endangered species. * * * Today, over ten years later, those fears have been laid to rest by a Supreme Court anxious to render its own decision as meaningless, ineffective, and unthreatening as possible. What is left of Batson is an infinitely cumbersome procedural obstacle course, created by the Court, which now plagues every voir dire in the land, civil and criminal. Through it all, the peremptory challenge is alive and well for those who know how to use it. Only the most overtly discriminatory or impolitic lawyer can be caught in Batson's toothless bite and, even then, the wound will be only superficial."
 {¶ 38} While we must deny the assignment raised by the appellant in this case because of the strong deference we must accord the trial court's finding, we find the action taken by the prosecutor in this case most unfortunate. While the prosecutor may not have intended to discriminate against Mr. Marcellus and the defendant because of their race, the simple fact remains that the defendant was tried by an all white jury. Assistant prosecutors, as agents of the state, must realize that such a situation as confronted by the defendant creates the "perception" that the criminal justice system is not color blind but is weighted against those defendants of color. Long ago, Mr. Justice Brandeis noted in Olmstead v. United States[1] that the government is the omnipresent teacher, for good or ill, it teaches the whole people by its example. In this case, Mr. Marcellus was an articulate business man active in his city's Priority Board who answered the call to serve as a juror. There was nothing in his answers given during the voir dire examination that suggested he would not be a fair and impartial juror. The assignment of error must, however, for the reasons given, be overruled.
 {¶ 39} The judgment of the trial court is Affirmed.
GRADY, J., and YOUNG, J., concur.
[1] Olmstead v. United States (1928), 277 U.S. 438, 48 S.Ct. 564,72 L.Ed. 944.