JOURNAL ENTRY and OPINION
{¶ 1} Appellants Gary Jarvis, Thomas Satava and Raymond Zwolenik (hereinafter collectively referred to as "Jarvis") appeal the judgment of the trial court following a jury trial, denying their motion for a new trial. Jarvis assigns the following errors for our review:
 {¶ 2} "I. The trial court committed clear error by failing to sustain plaintiffs' first Batson objection and this entitles plaintiffs to a new trial."
 {¶ 3} "II. The trial court committed clear error by failing to sustain plaintiffs' second Batson objection and this entitles plaintiff to a new trial."
 {¶ 4} "III. The trial court abused its discretion by not dismissing Juror Number 9, William Mawby, from the panel where he repeatedly demonstrated bias and equivocation on the central issue of awarding fear of cancer damages and this entitles plaintiffs to a new trial."
 {¶ 5} Having reviewed the record and pertinent law, we reverse the judgment of the trial court and order a new trial. The apposite facts follow.
 {¶ 6} On August 29, 2000, appellants Gary Jarvis and Thomas Satava brought an occupational disease action against appellees Consolidated Rail Corporation and American Financial Group, Inc.,(hereinafter referred to as "Consolidated") pursuant to the Federal Employers' Liability Act ("FELA"). On October 10, 2000, appellant Raymond Zwolenik commenced his action against appellees pursuant to FELA. Appellants contend they were exposed to asbestos and/or asbestos-containing products during the course of their employment with Consolidated, spanning over thirty years. Additionally, appellant Zwolenik alleged he was exposed to silica during his employment with Consolidated. Appellants sought damages for mental anguish caused by the fear of cancer due to their exposure to asbestos and/or asbestos-containing products while employed with Consolidated.
 {¶ 7} The three cases were consolidated for trial and jury selection commenced on June 23, 2003.
 {¶ 8} During the voir dire, Jarvis moved to strike Juror William Mawby for cause. Mawby had previously stated he could not award damages for fear of cancer, a central issue at trial. Jarvis used his first peremptory challenge to excuse Mawby.
 {¶ 9} At the conclusion of voir dire, Consolidated exercised all its peremptory challenges to strike three of five African-American females from the jury panel. Jarvis objected to the peremptory strikes of the African-American females.
 {¶ 10} Consolidated, citing hardship, had earlier excluded a fourth African-American female, who wished to go to an out of town wedding. Therefore, only one African-American out of five remained on the panel.
 {¶ 11} Following trial, the jury returned a verdict in favor of Consolidated. Jarvis subsequently filed a motion for a new trial alleging errors in voir dire. The trial court denied the motion for a new trial. Jarvis now appeals.
 {¶ 12} In the first assigned error, Jarvis contends the trial court erred by failing to sustain his first Batson objection and this entitles him to a new trial.
 {¶ 13} In order to state a prima facie case of purposeful discrimination under Batson v. Kentucky,[1] an accused must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race.[2] Although Batson is a criminal case, a private litigant in a civil case is also precluded from using peremptory challenges to exclude jurors on account of race.[3]
 {¶ 14} If the accused makes a prima facie case of discrimination, the state must then come forward with a neutral explanation.[4] As set forth in Batson:
 {¶ 15} "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See McCray v. Abrams [C.A. 2, 1984], 750 F.2d 1113, at 1132; Booker v. Jabe, (C.A. 6 1985),775 F.2d 762, 773, cert. pending, No. 85-1028, certiorari granted and judgment vacated (1986), 478 U.S. 1001, But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race. * * * Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `[affirming] [his] good faith in making individual selections'. Alexander v.Louisiana (1972), 405 U.S. 625, at 632, 92 S.Ct. 1221,31 L.Ed.2d 536. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause `would be but a vain and illusory requirement'. Norris v.Alabama, (1935), 294 U.S. 587, 79 L.Ed. 1074, 55 S.Ct. 579, at 598. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination."[5]
 {¶ 16} Once a race-neutral explanation for the peremptory challenge has been offered and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether a prima facie showing has been made becomes moot.[6]
 {¶ 17} Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means.[7] The inquiry, therefore, is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process.[8] A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous.[9] The trial court, in supervising voir dire, is best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility.[10]
 {¶ 18} Applying these principles to the facts of the instant case, we again note there were five African-American females on the venire. Consolidated exercised its peremptory challenge to remove three, and excused one for hardship. We will address each potential juror excluded in light of the three-step dictates ofBatson and its progenies.
 {¶ 19} At the conclusion of voir dire, Consolidated exercised its first peremptory challenge to strike Juror Charlie Scott, an African-American female. Consolidated used its second peremptory challenge to strike Juror Samekcreia Griffin, an African-American female. Jarvis then raised a Batson objection, alleging a pattern of race-based peremptory strikes.[11] The following colloquy took place:
 {¶ 20} "Mr. Doran: At this point, I want to put on the record that I'm going to object under the Supreme Court Batson decision concerning a pattern that's been established regarding minorities. Mr. Damico has already excused two African-Americans.
 {¶ 21} "The Court: What remedy do you seek? What are you asking?
 {¶ 22} "Mr. Doran: I'm challenging his dismissal. The case shows a pattern, two in a row here.
 {¶ 23} "The Court: Any comment, Mr. Damico?
 {¶ 24} "Mr. Damico: If I may, Your Honor, I don't have the exact number — frankly, I didn't keep track — but I believe at least four of the first 12 jurors were African-American women. I think the numbers speak for themselves.
 {¶ 25} "Mr. Doran: One of them already has been excused for his challenge when he was questioning her regarding her ability to be in this wedding, which I didn't exactly agree to on the excuse for cause, Miss Ruffin.
 {¶ 26} "Mr. Damico: Let me respond to that. That would make 5 out of the first 12, as opposed to 4 out of 11, and I simply agreed to let her go for a hardship. That was not a challenge for cause.
 {¶ 27} "The Court: Objection is overruled."[12]
 {¶ 28} The first of the three pronged analysis is to determine whether Jarvis demonstrated a prima-facie case of racial discrimination in Consolidated's use of the peremptory strike. Though the question of whether a prima-facie case was established became moot once the trial court asked for a response to the Batson objection, considered that response, and overruled the objecting party, we consider it nonetheless.[13]
 {¶ 29} Initially we note, Jarvis is entitled to rely on the fact that the strike is an inherently discriminating device, permitting those to discriminate who are of a mind to discriminate.[14] Jarvis alleged Consolidated demonstrated a pattern of strikes against black jurors thus giving rise to an inference of discrimination. In connection with the assessment of a prima facie case, Batson indicates that statistical disparities are to be examined.[15] By the time voir dire had reached the point where peremptory challenges were to be utilized, there were four African-American females left on the venire. Ultimately, Consolidated utilized its entire available strikes to exclude three of four African-American females, constituting a 75 percent challenge rate against minorities in the selection of the jury of 12. We think a challenge rate nearly twice the likely minority percentage of the venire strongly supports a prima facie case under Batson.
 {¶ 30} For the second prong, we must consider whether Consolidated offered a bonafide race neutral basis for dismissing Samekcreia Griffin, the second African-American female to be stricken. At the outset, we note the record indicates Consolidated asked no questions of Griffin during voir dire. In response to the trial court's request for a response to theBatson objection, Consolidated made no reference to the manner in which Griffin answered any questions, nor did he refer to any of her facial expressions, body language, or anything pertaining specifically to Griffin throughout voir dire. Though the explanation need not rise to the level justifying exercise of a challenge for cause, stating four of the first twelve jurors were African-American women falls below the threshold requirement of a race neutral justification.[16] Further, it is irrelevant how many minority jurors remain on the panel if even one is excluded on the basis of race.[17]
 {¶ 31} Consolidated failed to articulate a specific and reasonable racially neutral non-pretextual explanation for the peremptory exclusion of Griffin, and the trial court's determination that it did state an acceptable reason, is clearly erroneous. Accordingly, Jarvis' first assigned error is well-taken and sustained.
 {¶ 32} In the second assigned error, Jarvis also contends the trial court erred in failing to sustain his second Batson
objection.
 {¶ 33} Consolidated exercised its third peremptory strike to excuse Juror Patricia Larson, another African-American female, to which Jarvis raised a second Batson objection. The following exchange took place:
 {¶ 34} "Mr. Doran: Renew my objection. It's another black female. Three in a row. Certainly seems to be a pattern. There was (sic) two black women left on the panel.
 {¶ 35} "The Court: Well the replacement is a widow of a black man and the stepmother of three black children. The motion is overruled. Teresa Hudak-Johnson is our Juror Number 3. That completes the panel."[18]
 {¶ 36} The record indicates when Jarvis renewed his Batson
objection after Consolidated exercised its third peremptory strike by excluding Juror Larson, the court failed to follow the guidelines espoused in Batson and its progenies, even though this was the fourth African-American female excluded, three by peremptory strikes and one for cause. Although we ordinarily defer to the findings of the trial court regarding whether purposeful discrimination has been proved, the trial court failed to conduct the requisite Batson inquiry. In fact, the court did not permit Consolidated to offer a race neutral reason, but instead offered its own reasons. Further, the court's stated reason that the replacement is a widow of a black man and the stepmother of three black children, was completely inappropriate. Accordingly, we sustain Jarvis' second assigned error.
 {¶ 37} Our resolution of Jarvis' first and second assigned errors renders his third assigned error moot.[19]
 {¶ 38} The judgment is reversed and the cause is remanded.
Judgment reversed and cause remanded.
Celebrezze, Jr., and Calabrese, Jr., JJ., concur.
This cause is reversed and remanded.
It is, therefore, ordered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] (1986), 476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712.
[2] State v. Moore (1998), 81 Ohio St.3d 22, 28, 689, citing,State v. Hernandez (1992), 63 Ohio St.3d 577, 582, 589; Statev. Hill (1995), 73 Ohio St.3d 433, 444-445.
[3] Edmonson v. Leesville Concrete Co., Inc. (1991),500 U.S. 614, 114 L.Ed.2d 660, 111 S.Ct. 2077.
[4] Hill, supra, at 445.
[5] Batson, supra, at 97-98.
[6] State v. Hernandez, supra, at 583, citing Hernandez v.New York (1991), 500 U.S. 352, 114 L.Ed.2d 395,111 S.Ct. 1859.
[7] Hicks v. Westinghouse Materials Co. (1997),78 Ohio St.3d 95, 99.
[8] Id.
[9] Hernandez, 63 Ohio St.3d at 583.
[10] Hicks, supra, at 102, citing, Batson at 98.
[11] Batson v. Kentucky, 476 U.S. 79 (1986).
[12] Tr. at 162-163.
[13] See Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866,114 L.Ed.2d at 405.
[14] State v. Hernandez (1992), 63 Ohio St.3d 577, 582, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279,121 L.Ed.2d 206.
[15] 476 U.S. at 96.
[16] Tr. at 26.
[17] Jones v. Ryan (C.A. 3 1993), 987 F.2d 960, 972; U.S. v.David (C.A. 11, 1986), 803 F.2d 1567.
[18] Juror No. 5 was excluded for cause. Consolidated explained it excluded her because of hardship because the juror wanted to attend an out of town wedding. However, Juror No. 5 stated "it's not a hardship. I am in a wedding and it's out of town and I actually start my vacation on Sunday, but I can change that." Juror No. 5 was clearly willing to serve on the jury.
Tr. at 164.
[19] App.R. 12(A)(1)(c).