JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Patrick Young ("Young"), appeals his conviction by a jury for theft of a motor vehicle in violation of R. C. 2913.02. Young argues that he was denied various constitutional rights because: (1) the state removed all black jurors from the venire panel; (2) the evidence was insufficient to support his conviction; (3) the trial court permitted a police officer to opine on the truthfulness of the victim; (4) the state was improperly allowed to present evidence of Young's other bad acts; and (5) he was denied effective assistance of counsel. We find merit in Young's assignments of error Nos. II and III and, therefore, reverse the judgment of the trial court.
 {¶ 2} The facts relating to this appeal occurred on November 2, 1999, when Young took a vehicle belonging to his girlfriend, Shelly Glenn ("Glenn") The events leading up to November 2nd reveal a troubled and violent history between Young and Glenn. At trial, Glenn testified that she and Young had first met in 1994 when she was 16 years old and he was 30 years old. By the time Glenn was 17, she was pregnant with the first of three children she would have with Young.[1] Young and Glenn lived together for a while, during which time Glenn often called the police because of Young's violent behavior. Young was arrested numerous times and by 1999, he had a history of domestic violence against Glenn.
 {¶ 3} Glenn and Young separated when she left him in late October or early November 1999. After their separation, Young frequently contacted Glenn asking that they reconcile. On November 2, 1999, Young, apparently without a car, asked Glenn to drive him to drop off a job application and to go to a job fair at the Holiday Inn in Independence, Ohio.
 {¶ 4} Glenn drove to Young's house and arrived there at approximately 10:00 a.m. Once there, Glenn told Young that she was in a new relationship. According to Glenn, Young became upset, "grabbed the keys and told me, let's go." Glenn explained that the reason she got in the car with Young was because she was afraid and knew him to be "very violent." Glenn told the jury about Young's history of threatening to hurt her and her family and other instances of physical and emotional abuse by him.
 {¶ 5} Over the course of the next 5 to 6 hours, Young continued to drive Glenn's vehicle to various locations. Young dropped off his job application, went to the job fair, and stopped at his sister's house. At each stop, Glenn accompanied Young. Some time between 6:00 p.m. and 6:30 p.m., Young decided to stop at a local bar. After Glenn got out of the car, she started to run away from Young and eventually ran inside a store to ask for help. Young chased Glenn into the store and was visibly upset. A salesman told Young to leave the premises, which he did, but in Glenn's car.
 {¶ 6} Glenn walked home, called the police, and reported her car stolen. Throughout her testimony, Glenn admitted that when she and Young lived together, she let him use her car. Glenn maintained, however, that once they separated, which included November 2nd, she had never given Young permission to drive, let alone take her car.
 {¶ 7} The state's next witness was 22-year-old Nikeeta Maddox ("Maddox"), Young's niece. Maddox testified that she lives across the street from her grandmother, Young's mother, Lesley. On the night of November 2, 1999, Maddox, from her own window, saw Young driving Glenn's car down the street. The next morning, Maddox saw Young shoveling snow off her grandmother's car which had apparently been parked in the driveway overnight. Maddox became concerned because she knew her grandmother was in the hospital and that her car had been parked in the garage the day before. Maddox alerted the police who found Glenn's car in Lesley Young's garage.
 {¶ 8} Officer Tim Hensley testified that he was one of the responding officers on November 3, 1999. Hensley confirmed that when he arrived at Lesley Young's house, Glenn's car was in the garage with the garage door closed. The police notified Glenn that they had located her vehicle. The car was processed by police and eventually released to Glenn.
 {¶ 9} We turn now to a review of Young's first assignment of error, which states:
{¶ 10} ASSIGNMENT OF ERROR NO. 1:
{¶ 11} PATRICK YOUNG WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE LAW, WHEN THE STATE REMOVED ALL BLACK JURORS FROM THE VENIRE PANEL, LEAVING AN ENTIRELY WHITE JURY.
{¶ 12} At the outset of our review under this claim of error, we note that Young misstates the true racial composition of the jury in his case. Contrary to Young's claim, one black juror did remain in the venire panel. The record reflects the following statement by Young's lawyer:
{¶ 13} * * * we are now sitting here with a jury impaneled which I believe does have one black man on the jury, juror number 11, as he is on the list.
{¶ 14} (Tr. 5, vol I.)
 {¶ 15} The record confirms that Young's jury was not composed of all white jurors. We further note that each of the cases Young cites are inapposite to the facts here. All of Young's cases involve an all white jury. In the case at bar, even though two prospective black jurors were stricken, Young is not entitled to a presumption of discriminatory motive by the state where one black juror remained to deliberate the verdict in this case.
 {¶ 16} We further find that in its explanation for striking black jurors #4 and #18, the state provided sufficient reasons. As this court noted in State v. Pennington, Cuyahoga App. No. 78878, 2001 Ohio 4888, the appropriate standard was enunciated in Hicks v. WestinghouseMaterials Co. (1997), 78 Ohio St.3d 95, 98-99, 676 N.E.2d 872, in which the Ohio Supreme Court set forth the test to be used in determining whether a peremptory challenge is racially motivated. The court found:
{¶ 17} "The United States Supreme Court set forth in Batson v. Kentucky (1986), 476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712, the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently discriminating device, permitting those to discriminate who are of a mind to discriminate. State v. Hernandez (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference or inferences of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority members is present. See Batson at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation related to the particular case to be tried. Id. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation need not rise to the level justifying exercise of a challenge for cause. Id. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race. Hernandez v. New York (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408.
{¶ 18} "Last, the court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. Purkett v. Elem (1995), 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839. The critical question which the trial judge must resolve is whether counsel's race-neutral explanation should be believed. Hernandez v. New York, 500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d at 409. * * * Trial judges must exercise a considerable care in reviewing a claim of racial discrimination in the jury selection. A judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition to a peremptory challenge. Cunningham v. St. Alexis Hosp., 2001 Ohio App. LEXIS 1701 at 8 (April 12, 2001), Cuyahoga App. No. 77836, unreported."
 {¶ 19} On appeal, review of a Batson claim "largely hinges on issues of credibility." Hicks, supra. Whether a party intended to discriminate in using peremptory challenges is a question left to the trier of fact. In the absence of clear error, we will not reverse a trial court's determination of a party's challenge to a juror. Hicks, supra.
 {¶ 20} In the case at bar, the record shows that the state used two of its peremptory challenges to strike prospective jurors No. 4 and No. 18, both of whom are black. In justifying the removal of both jurors, the state provided the following explanation:
{¶ 21} * * *
{¶ 22} I will note that * * *, juror number 4, whom the state struck using second peremptory is indeed a black man, but he felt he had been wrongfully accused as a juvenile, and wrongfully convicted as a juvenile based in part by police work of the Cleveland Police Department. As the Court is well aware, there will be testimony from a Cleveland Police Department detective in this case. Mr. * * * was very forthright in telling the Court he was very troubled by that experience, that he still did think of it from time to time.
{¶ 23} He also said in his neighborhood, he felt the Cleveland Police Department, since he is a resident of the City of Cleveland, in the Wade Park area, did not take reports of crimes seriously enough, to the point where he had actually stopped reporting, and that he felt that his home had somehow been marked, and that crime was taking place, and the police were not responding in a satisfactory fashion.
{¶ 24} I would remind the court also that [juror No. 4] felt he might know the defendant, that he couldn't be sure where or when he knew him, or from where he might recognize him.
{¶ 25} For all these reasons, the State of Ohio believed that he was a juror which we, for various reasons, would prefer not to have on the jury, and we struck him for the reasons that I've stated. * * *
{¶ 26} * * *
{¶ 27} * * * As far as Miss * * * goes, the prosecution moved to excuse her for two reasons, two reasons only. The first reason was that by quite a coincidence, her grandson, I believe it was, had been arrested and convicted of the exact same crime, which that is theft of a — grand theft of a motor vehicle, and incarcerated for that crime, which the defendant is charged with today. And although she said that he did the crime, and he should do the time, so to speak, the prosecution felt there was a strong likelihood that because her grandson had been incarcerated for the same thing * * * that very well may cloud her judgment in rendering a verdict today.
{¶ 28} Also, extremely persuasive to the State was the fact that she had said that her interactions with the Cleveland Police Department had not been positive, * * * her opinion was — as expressed — was quite low of their investigative efforts.
 {¶ 29} In the case at bar, we conclude from the record that the state conceded that Young established a prima facie case because he is black and so are both of the stricken jurors, Nos. 4 and 18. Under the second prong of Batson, we must decide whether the state gave a race-neutral explanation in its use of peremptory challenges. As noted above, we find that the state satisfied the second step of Batson by providing the court with race-neutral explanations for striking jurors No. 4 and No. 18.
 {¶ 30} Under the third and final step of the Batson test, the court must determine whether the state had a discriminatory motive for striking a juror. The burden of persuasion, however, remains with the opponent of the strike. Pennington, supra. Under this step of the analysis, a reviewing court must extend deference to the trial court since this is the stage that the persuasiveness and credibility of the justification offered by the striking party becomes relevant. Pennington citing Purkettv. Elem (1995), 514 U.S. 765, 768, 131 L.Ed.2d 834, 115 S.Ct. 1769.
 {¶ 31} We may not ignore the fact that evaluations of credibility are conducted by the trial court in a Batson challenge. The record before this court is clear that, following lengthy arguments by both sides, the trial court noted that some of Young's concerns were valid but, nonetheless, decided "that the State's reasonings articulated are race neutral." The trial court accepted the state's explanation and there are no other facts in the record to support Young's claims that the state's removal of jurors No. 4 and No. 18 was racially motivated. The trial court, therefore, did not abuse its discretion in deciding that the state did not violate Batson in the use of its peremptory challenges. Appellant's first assignment of error is overruled.
{¶ 32} ASSIGNMENT OF ERROR NO. II:
{¶ 33} PATRICK YOUNG WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION, WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
 {¶ 34} Young argues that his conviction is based upon insufficient evidence. We agree. In State v. Thompkins (1997), 78 Ohio St.3d 380,386-387, 678 N.E.2d 541, the court set forth the following standard for sufficiency of the evidence:
{¶ 35} With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.
 {¶ 36} In order to determine whether Young's argument has merit, we follow the following standard.
{¶ 37} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
{¶ 38} State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Bilick, Cuyahoga App. No. 71238, 1997 Ohio 2776.
{¶ 39} R.C. 2913.02, in part, states:
{¶ 40} (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over * * * the property * * * without the consent of the owner * * *.
{¶ 41} Young argues that the state did not sufficiently prove that he intended to permanently deprive Glenn of her car. As noted in the 1974 comment section to the statute, "[t]he deprivation need not, strictly speaking, be permanent. * * * The definition of `deprive' in this section is also broadened to include a temporary deprivation of property resulting in some substantial loss to the owner."
 {¶ 42} Before we address Young's specific claim that the state failed to prove his intent to "deprive" Glenn of her vehicle pursuant to R.C. 2913.02, we are compelled to recognize, sua sponte, a plain error not raised by either party in this case. As noted in State v. Slagle
(1992), 65 Ohio St.3d 597, 605 N.E.2d 916:
{¶ 43} As a general rule an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred. * * * The rule provides that: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule allows the appellate court, at the request of appellate counsel or sua sponte, to consider a trial error that was not objected to when that error was a "plain error."
{¶ 44} Under Slagle, supra, a reviewing court must ask whether the alleged error substantially affected the outcome of the trial. To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a miscarriage of justice. State v.Bock (1984), 16 Ohio App.2d 146.
 {¶ 45} The record shows that Young moved for a judgment of acquittal under Crim.R. 29, after both sides rested, but before closing arguments.[2] Young argued then that the state had not met its burden of proving his intent to deprive Glenn of her car. The significance of Young's motion, even though the court denied it, is the fact that at this juncture in the proceedings, the trial court was in the position of having to assess the evidence and determine if the state had met its burden. More importantly, the court was required to decide, absent a waiver by the parties, if the facts supported not only the theft charge, but also, whether they supported any lesser-included offense. State v.Smead, Montgomery App. No. 10922, 1989 Ohio 392, discussed infra.
 {¶ 46} Under State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, the Ohio Supreme Court held that
{¶ 47} [p]ursuant to R.C. 2945.74 and Crim.R. 31(C), a fact finder may consider lesser included offenses of a charged offense and may find defendant guilty of a lesser included offense if the facts support such a result.
 {¶ 48} In the case before us, the pivotal issue is whether the court should have charged the jury on the lesser-included offense of unauthorized use even though Young did not request such an instruction. Because we answer this question in the affirmative, we find that the trial court's failure to so instruct the jury rises to the level of plain error. Slagle, supra; State v. Underwood (1983), 3 Ohio St.3d 12.
 {¶ 49} R.C. 2913.03, Unauthorized use of a vehicle, provides in relevant part:
{¶ 50} (A) No person shall knowingly use or operate [a] * * * motor vehicle * * * without the consent of the owner or person authorized to give consent.
{¶ 51} * * *
{¶ 52} (D) Violation of division (A) of this section is a misdemeanor of the first degree. If the offender has previously been convicted of a violation of this section or of any other theft offense, violation of division (A) of this section is a felony of the fourth degree. Violation of division (B) of this section is a felony of the fourth degree.
{¶ 53} As noted in Smead, supra:
{¶ 54} If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of a crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.
{¶ 55} The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant.
{¶ 56} Smead at *10-*11. See, also, State v. Kidder (1987),32 Ohio St.2d 279; and State v. Solomon (1981), 66 Ohio St.2d 214. Unauthorized use of a motor vehicle, R.C. 2913.03, is a lesser-included offense of R.C. 2913.02. State v. Smead, supra.
 {¶ 57} Following Smead, a charge on the lesser-included offense of unauthorized use in this case is required only if the jury could have reasonably concluded that Young did not intend to deprive Glenn of her car.[3] We believe that the jury could have reasonably concluded that Young did not possess the requisite intent. At trial, Young's defense to the charge of theft was that he never intended to permanently deprive Young of her vehicle.
 {¶ 58} In support of his defense, Young presented evidence that Glenn had previously allowed him to use her car on several occasions before the incident in question. Glenn freely admitted to traveling with Young for several hours that day, during which time she never requested that he return control of the car to her. Glenn's car was found in his mother's garage; a location we can presume was well-known to Glenn given the amount of time she and Young were a couple. Maddox testified that she saw Young in Glenn's car and then, the next morning, saw him preparing to drive her grandmother's car. Though we prefer that Young not have Glenn's car at all, the fact remains that he did not take the car to a distant place or one unknown to Glenn. We further note that the state did not present any evidence that Glenn suffered a "substantial loss" as is required by the statute. Glenn's car was recovered the next day in an apparently undamaged condition.
 {¶ 59} Under the standard for plain error, one cannot reasonably conclude that Young was attempting to indefinitely hide Glenn's car inside his mother's garage. Under these circumstances, the trier of fact could reasonably have found against the state on Young's "purpose to deprive" and still find for the state on the other elements. We conclude that the jury could have reasonably found Young guilty of the lesser-included offense and that, but for the trial court's failure to give the requisite instruction for unauthorized use, the result of the trial would have been otherwise.
 {¶ 60} Without a correction by this court, Young will suffer a miscarriage of justice given the state of the evidence in this case. Appellant's second assignment of error is sustained.
{¶ 61} ASSIGNMENT OF ERROR NO. III:
{¶ 62} PATRICK YOUNG WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL JURY, WHEN A POLICE OFFICER TESTIFIED THAT, BASED ON HIS LONG EXPERIENCE OF EVALUATING THE STATEMENTS OF PEOPLE FOR INCONSISTENCIES TO [SIC] AS TO DETERMINE WHETHER THEY WERE CREDIBLE, HE BELIEVED THE VICTIM IN THE CASE AT BAR WAS TELLING THE TRUTH.
 {¶ 63} In his third assignment of error, Young argues that the trial court erred in allowing the testimony of Detective James Jackson of the Cleveland Police department. According to Young, the trial court erred by allowing Detective Jackson to testify as follows:
{¶ 64} Q: In your experience as a detective and a police officer for these many years, do you ever make an attempt to see if a witness's story is consistent?
{¶ 65} A: Yes.
{¶ 66} Q: That's part of your evaluation of a witness?
{¶ 67} A: Yes.
{¶ 68} Q: And did you ever reach the conclusion — using your law enforcement training and experience, do you ever reach the conclusion that a story has too many inconsistencies to be credible?
{¶ 69} A: Yes.
{¶ 70} Q: Did you go through that kind of evaluation with Shelly Glenn?
{¶ 71} A: Yes, I did.
{¶ 72} Q: What conclusion did you reach?
{¶ 73} A: That she was telling the truth.
{¶ 74} (Tr. 223).
 {¶ 75} Young claims that Detective Jackson's testimony improperly invaded the province of the jury because only it can determine witness credibility. We agree.
 {¶ 76} Because Young made no objection to the introduction of Detective Jackson's testimony during trial, he has waived all but plain error. Evid.R. 103(A)(1); State v. Jalowiec (2001), 91 Ohio St.3d 220,744 N.E.2d 163. In the record before us, the detective's testimony constitutes plain error because the jury was prevented from determining the truthfulness of Glenn on its own. State v. Boston (1989),46 Ohio St.3d 108.
 {¶ 77} We reject the state's claim that Detective Jackson was merely vouching for Glenn's credibility and simply explaining police procedure for gathering and evaluating evidence. If that was all the detective accomplished during his testimony, it would not be improper. As it is, however, Detective Jackson, instead of answering the question posed[4], opined that "she was telling the truth." The testimony divested the jury of its ability and right to decide the credibility of Glenn herself and is, therefore, error. Young's third assignment of error is sustained.
 {¶ 78} Because we sustain Young's second and third assignments of error, we need not address his remaining assignments in this appeal. The judgment of the trial court is hereby reversed, appellant's sentence vacated, and this matter remanded for a new trial. Judgment accordingly.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., CONCURS; TERRENCE O'DONNELL, J., CONCURS IN PARTAND DISSENTS IN PART (SEE SEPARATE OPINION).
[1] At the time of the events described herein, all three children were in foster care.
[2] Young had also made the same motion following the close of the state's case-in-chief.
[3] We underscore that our holding in this case is narrowly confined to those instances where, as in the case at bar, the nature of the evidence compels an instruction to the jury on both the greater and lesser included offenses. This is true even if a party's failure to make a request for an instruction on a lesser included offense could be considered by the trial court as a strategy of litigation. The fact remains that it is the quality of the evidence that determines which jury instructions are warranted.
[4] Namely, did the procedure you followed lead you to believe there were inconsistencies in what Glenn related to you?