[Cite as *State v. Jackson*, 2016-Ohio-4835.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00015 |
| QWHYNIJIAH  I  JACKSON | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Criminal appeal from the Canton Municipal
Court, Case No. 2015 CRB 5008

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 5, 2016

APPEARANCES:

For Plaintiff-Appellee

KELLY PARKER
Canton City Prosecutor Office
7th Floor
Canton, OH 44702

For Defendant-Appellant

REGINA FRANK
201 Cleveland Ave. S.W.
Suite 104
Canton, OH 44702

*Gwin, P.J.*

{¶1}    Appellant Qwhynijiah Jackson ["Jackson"] appeals her conviction and sentence after a jury trial in the Canton Municipal Court for one count of assault a misdemeanor of the first degree in violation of R.C. 2903.13(A).

*Facts and Procedural History*

{¶2}    On April 24, 2015, Bethany Ramos, her son, Jordan Gattuso, Jordan's friend Nate, and Kayla Branch were drinking.  Ramos had two drinks at a bar known as the Top Shelf; the group then proceeded to Hooch's arriving sometime around midnight.

{¶3}    On April 24, 2015, Jackson finished her nine-hour shift at work and went home.  Jackson and her boyfriend Marvin Proctor called in a food order for pick up from Hooch's.  Neither Jackson nor Proctor was drinking.

{¶4}    Hooch's has a video surveillance system that recorded the ensuing events. Jackson and Proctor arrived at Hooch's picked up their order and were walking out of the door; however, Jackson turned around.   Jackson testified she turned around because Ramos called her a "black bitch."  (T. at 126).  Jackson asked Ramos what she said, to which Jackson testified that Ramos called her a "nigger."  (T. at 126).

{¶5}    Ramos testified that Jackson walked past her and said something, to which Ramos responded, "What bitch."  (T. at 86).  Ramos could not recall what she believed Jackson had said to her as she walked past. Jackson appears to strike Ramos in the face. Ramos backs away.  Jackson charged Ramos tackled her to the ground, and struck her in the face.

{¶6}    The patrol officer who originally interviewed Ramos states that she appeared intoxicated based on the officer's training and experience, was unable to

remember a lot of the night, used racial epithets, and seemed concerned she had said something to upset Ms. Jackson.

{¶7} The case was assigned to Detective Adams of the Canton Police Department. Detective Adams spoke with Ramos numerous times over the phone before she came to the police station. Upon seeing Detective Adams for the first time, Ramos, made the comment "I knew you were black." (T. at 139). At that time, Detective Adams went upstairs and interviewed another person who was at the bar at the time of this incident. That person, Marvin Proctor, was able to show Detective Adams text messages from Ms. Ramos to Mr. Proctor. (T. at 139-141). Detective Adams spoke with Mr. Proctor, Ms. Jackson, multiple witnesses, and reviewed the video of that night. Upon review of everything, Detective Adams concluded that Ms. Ramos was drunk and causing a scene at the bar that night and that no charges needed to be filed.

{¶8} Ramos had a black eye for two weeks, nine stitches in her chin, and had dental surgery to repair a bone chip in her jaw.

{¶9} On October 27, 2015, Jackson, was indicted on one count of Assault, a misdemeanor of the first degree. On January 12, 2016, the jury found Jackson guilty of one count of Assault. The trial court sentenced Jackson to fifteen days in Stark County Jail with credit for nine days previously served. Appellant was given a report date for the remaining six days.

*Assignments of Error*

{¶10} Jackson raises two assignments of error,

{¶11} "I. APPELLANT'S CONVICTION FOR ASSAULT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶12} "II. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S BATSON OBJECTION."

I.

{¶13} In her first assignment of error, Jackson challenges the sufficiency of the evidence; she further contends her conviction is against the manifest weight of the evidence produced by the state at trial. Specifically, Jackson argues that she was clearly incited to violence by Ms. Ramos drunkenly using racial slurs.

{¶14} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶15} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established

before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶16} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶17} To find Jackson guilty of assault, the trier of fact would have to find that Jackson knowingly caused or attempt to cause physical harm to another. R.C. 2901.01 states, in relevant part: "(3) 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶18} In the case at bar, there is no dispute that Jackson punched Ramos in the face requiring Ramos to receive nine stitches in her chin. Ramos further required dental surgery to repair a bone chip in her jaw because of Jackson's punches.

{¶19} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Jackson knowingly caused physical harm to another.

{¶20} We hold, therefore, that the state met its burden of production regarding each element of the crimes of assault and, accordingly, there was sufficient evidence to support Jackson's conviction.

{¶21} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether

the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.  * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).  Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses.  *See, e.g., In re Brown*, 9th Dist. No.  21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶22} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶23} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118.  *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86

L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶24}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶25}** In the case at bar, the jury heard Jackson's version of the events, Ramos' version of the events and watched the surveillance video that captured the events in real time.

**{¶26}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Jackson of the charges.

{¶27} Based upon the foregoing and the entire record in this matter, we find Jackson's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the Ramos and the other state's witnesses and Jackson and her witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Jackson's guilt.

{¶28} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of assault beyond a reasonable doubt.

{¶29} Jackson's first assignment of error is overruled.

II.

{¶30} In her second assignment of error, Jackson argues that the trial court erred in overruling defense counsel's objection to a peremptory challenge by the prosecutor under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986).

{¶31} In this case, the state moved to strike juror number seventy-four, an African American female for cause, which was overruled. The state later used a peremptory challenge for the same juror, which was granted.

{¶32} *Batson* held that the Fourteenth Amendment's Equal Protection Clause prohibits prosecutors from using a peremptory challenge against a juror on the basis of

that juror's race.  476 U.S. at 89.  This prohibition is enforced via *Batson's* three-step process.

**{¶33}** In *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98, 676 N.E.2d 872(1997), the Ohio Supreme Court set forth the *Batson* test as follows:

> The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated.  First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike.  Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87.  To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire.  The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'.  *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, *certiorari denied* (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206.  The litigant must then show an inference of racial discrimination by the striking party.  The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present.  See, *Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.  Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation

'related to the particular case to be tried.' Id. at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. *Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409(1991).

*Hick,* 78 Ohio St.3d. at 98-99, 676 N.E.2d 872(1997).

**{¶34}** In the case at bar, Jackson does not argue or allege purposeful discrimination. Rather, Jackson argues, "Due to the nature of the case, and the specific argument by Ms. Jackson that she was provoked into this Assault by the use of racial slurs, a jury with no members of her race is not able to adequately understand the feelings such a word invokes." Appellant's Brief at 9.

**{¶35}** Trial counsel objected based upon the fact that only two African-American's were in the jury pool. Trial counsel did not offer any further explanation to make his prima facie case as required in the first step of the *Batson* test. He did not refer to any statements made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive. Moreover, even if Jackson had met her prima facie burden to go forward on the challenge, the prosecutor gave a race neutral reason for using a peremptory challenge against the juror. We are mindful that only the trial court observed first-hand "the demeanor of the attorney who

exercise[d] the challenge, along with whether [each stricken panelist's] demeanor can credibly be said to have exhibited the basis for the strike." *United States v. Mensah,* 737 F.3d 789, 796 (1st Cir. 2013) (internal quotation marks omitted). On direct appeal, the trial court's findings may be reversed only if the trial judge is shown to have committed clear error. *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).

{¶36} We do not find that the trial court's dismissal of juror seventy-four was in error and we find that the prosecutor's reason for using a peremptory challenge on juror seventy-four was racially neutral.

{¶37} Jackson's second assignment of error is overruled.

{¶38} The judgment of the Canton Municipal Court is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur