[Cite as *State v. Lottie*, 2023-Ohio-3947.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| BURNES A. LOTTIE, II, | : | | Case No. 2022 CA 0063 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Richland County
                                 Court of Common Pleas, Case No.
                                 2022-CR-279N

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                October 31, 2023

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JODIE SCHUMACHER                          WILLIAM T. CRAMER
Prosecuting Attorney                      470 Olde Worthington Road, Suite 200
Richland County, Ohio                     Westerville, Ohio 43082

By:  JODIE SCHUMACHER
Prosecuting Attorney
38 South Park Street, Second Floor
Mansfield, Ohio 44902

*Baldwin, J.*

**{¶1}** The appellant argues that his convictions for failure to verify periodic registration pursuant to his classification as a Tier I Sex Offender in 2009 and in 2017 were not supported by sufficient evidence. In addition, he argues that his equal protection rights were violated because the trial court refused to determine whether the appellee's race-neutral reasons for dismissing the only African-American juror were merely a pretext for purposeful discrimination. Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** In 2009, the appellant pleaded guilty to one count of importuning and was classified as a Tier I Sexual Offender, which required him to register as such yearly for fifteen years. In 2017, the appellant pleaded guilty to two counts of gross sexual imposition, and was once again classified as a Tier I Sexual Offender with the same registration requirements. The appellant signed an Explanation Of Duties To Register As A Sex Offender form in connection with his classifications which outlined the duties associated with his classification, including his duty to report.

**{¶3}** The appellant initially registered with the Richland County Sheriff's Department on March 24, 2021 following his release from prison, establishing March 24th as his annual registration date. However, the appellant failed to register on March 24, 2022.

**{¶4}** On March 25, 2022, the Department prepared and mailed a warning letter to the appellant regarding his failure to register which advised him, *inter alia*, that he had seven days, or until April 1, 2022, within which to comply with his annual registration duty. The appellant did not register, and on or about April 6, 2022 a Complaint was filed against

him on the charges of failure to periodically register as a Tier I Sexual Offender. The appellant was charged with failure to verify periodic registration, and was indicted on May 5, 2022 on two counts of failure to verify address in violation of R.C. 2950.06(F) in connection with the 2009 and 2017 criminal matters. The appellant pleaded not guilty to the charges.

{¶5}    The matter proceeded to trial on August 16, 2022. During jury selection the appellee exercised its final peremptory challenge to excuse Juror Number 7, who was the only African-American in the jury pool. The appellant proffered a Batson challenge, arguing that the appellee sought to excuse Juror Number 7 based solely upon race and was therefore engaging in racial discrimination. The appellee argued that Juror Number 7's reactions to voir dire questions, both general questions and questions directed to other potential jurors, indicated that he would not be receptive to the appellee's arguments; that Juror Number 7 exhibited negative body language as the appellee laid out its case; and, that Juror Number 7's demeanor during both parties' questions indicated that he did not want to be there and did not want to engage in the case. The appellant argued that the appellee had not asked Juror Number 7 any questions directly. The appellee responded that it need not directly question Juror Number 7, that it observed Juror Number 7's reactions and body language during the voir dire open forum, and that he was shaking his head during counsel's interactions with another juror who said he was relieved that he did not have to participate in the trial, that he "didn't want to have to deliberate, that he didn't want any part of that." Finally, the appellee again argued that it did not believe that Juror Number 7 was receptive to its theory of the case.

{¶6} The trial court determined that the appellee had proffered an articulable reason for exercising its final peremptory challenge to excuse Juror Number 7, and allowed Juror Number 7 to be removed from the jury.

{¶7} Richland County Sheriff's Department Records Supervisor Alisa Finley, who supervises sex offender, arson, and violent offender registration, was the first witness to testify following opening arguments. Ms. Finley testified that the appellant's initial registration date took place on March 24, 2021, and that March 24th thereafter became his annual registration date, the importance of which was explained to the appellant.

{¶8} The appellant met with Ms. Finley again on August 20, 2021, when he submitted a change of address form. Ms. Finley testified that the appellant "did a change of address," and that she "gave him his next paper with his date that he need[ed] to come in and register again," which read in pertinent part:

Tier I Sex Offender for a period of 15 years with a verification on each anniversary of the initial registration.

* * *

Burnes Lottie, Number 93727, your expected residence address as stated on page 2 is located in Richland County. You shall register in person no later than 3/24/2022, with the following county sheriff's office: [Richland County Sheriff's Office address.]

{¶9} The appellant initialed the registration date, acknowledging that his next registration date was March 24, 2022.

{¶10} Ms. Finley testified that the appellant failed to register on March 24, 2022. On the morning of March 25, 2022, she prepared a late warning letter to the appellant

advising him of his failure to satisfy his annual duty to verify his address, and that he had seven days, or until April 1, 2022, by which to comply. Ms. Finley testified that the letter was addressed to the appellant at the address he had provided to the Department, and that she put it in the mail that morning.[1]

**{¶11}** Sergeant Amber Alfrey testified that on April 6, 2022, she swore out a complaint against the appellant for his arrest based upon his failure to verify his periodic registration as required by statute, a felony of the third degree. The appellant, having been told by his parole officer that a warrant had been issued for his arrest, turned himself in on April 11, 2022. He was arraigned before the Municipal Court on April 12, 2022, at which he pleaded not guilty, and bound over to Common Pleas Court. On May 5, 2022, the appellant was indicted on two counts of failure to verify address in violation of R.C. 2950.06(F).

**{¶12}** Sergeant Alfrey testified regarding the appellant's statutory duties to report:

Q:      When the defendant came in on March 24, 2021, was he given the date of March 24th as his annual date?

A:      Yes.

Q:      What is that?

A:      That is his periodic registration date.

Q:      Okay. Is it a warning to him, this is an important date?

A:      Yes.

---

[1] The March 25, 2022 letter, which was post-marked March 28, 2022, was stamped "undeliverable" on April 2, 2022 and thereafter returned to the Sheriff's Department.

Q:    When he came in to verify - - or change his address and he was given this form, was he given March 24th as his annual date?

A:    Yes, he was.

Q:    Was that a warning?

A:    Yes.

Q:    And he was allowed to take this form; right?

A:    Yes, he is given that form.

                              *        *        *

Q:    So how many opportunities and warning did he have that his was an important date that he shouldn't remember - - he shouldn't forget?

A:    In addition to when it was explained to him in court proceedings as well, plenty.

Q:    Okay. So this letter that is sent, that's an after-the-fact thing that you're just required to send; right?

A:    Right. Correct.

Q:    And it being sent concludes the obligation of the sheriff's office; correct?

A:    Yes.

Q:    Whose responsibility is it from the time that he became a registered sex offender to make sure he verifies his address as he's supposed to?

A:    Solely the defendant's.

{¶13} In addition to the testimony of Ms. Finley and Sergeant Alfrey, the appellant testified. The jury returned a verdict of guilty on both counts.

**{¶14}** The appellant filed a timely appeal in which he sets forth the following assignments of error:

**{¶15}** "I. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BY GUILTY VERDICTS THAT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶16}** "II. APPELLANT'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION WAS VIOLATED WHEN THE TRIAL COURT REFUSED TO DETERMINE WHETHER THE STATE'S RACE-NEUTRAL REASONS FOR DISMISSING THE ONLY AFRICAN-AMERICAN JUROR WERE MERELY A PRETEXT FOR PURPOSEFUL DISCRIMINATION."

### STANDARD OF REVIEW

**{¶17}** In his first assignment of error, the appellant challenges his convictions for failure to verify his address on sufficiency of the evidence. Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would

be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57.

**{¶18}** Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶19}** In his second assignment of error, the appellant argues that the appellee's exercise of a peremptory challenge to excuse Juror Number 7 was racially discriminatory. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits purposeful discrimination in the form of a prosecutor's use of a peremptory challenge to excuse a prospective juror based on his or her race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). When a defendant objects to a prosecutor's peremptory challenge on these grounds, the trial court must apply a three-step analysis. First, the court must determine whether the defendant has established a prima facie case of purposeful discrimination. *Batson* at 93. If the defendant has established a prima facie case of purposeful discrimination, then the burden shifts to the prosecutor to present a race-neutral explanation for the challenge. *Batson* at 94.

Finally, the trial court must decide, based on all the relevant circumstances, whether the defendant has proved purposeful discrimination. *Batson* at 98.

## ANALYSIS

**{¶20}** In his first assignment of error, the appellant argues that because the warning letter sent to him by the sheriff's department was post-marked March 28, 2022, the appellee failed to comply with the statute regarding transmittal of warning letters, and as a result his conviction must be overturned. We disagree.

**{¶21}** R.C. 2950.06 provides for verification of current address of residence, school, or place of employment for offenders who are required by statute to register, and provides in pertinent part:

(G)(1) If an offender or delinquent child fails to verify a current residence, school, institution of higher education, or place of employment address, as applicable, as required by divisions (A) to (C) of this section by the date required for the verification as set forth in division (B) of this section, the sheriff with whom the offender or delinquent child is required to verify the current address, on the day following that date required for the verification, shall send a written warning to the offender or to the delinquent child and that child's parents, at the offender's or delinquent child's and that child's parents' last known residence, school, institution of higher education, or place of employment address, as applicable, regarding the offender's or delinquent child's duty to verify the offender's or delinquent child's current residence, school, institution of higher education, or place of employment address, as applicable.

**{¶22}** R.C. 2950.06(F) states that the sheriff's department must *send* a warning letter to the offender's last known address. If R.C. 2950.06(F) is unambiguous, it "is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus as quoted in *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 30.

**{¶23}** The appellant argues that because the letter was post-marked March 28, 2022 that the Sheriff's Department failed to send the warning letter in compliance with the statute. However, Black's Law Dictionary defines "send" as a "term in connection with any writing or notice" which "means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed…." *Black's Law Dictionary* 1361 (6th Ed.1990). In this case, Records Supervisor Finley testified that she prepared the letter, addressed it to the appellant at the address he provided to the Department, and put the letter in the mail on March 25, 2022. Accordingly, the statutory requirements were satisfied.

**{¶24}** The case of *State v. Alltop,* 2nd Dist. Montgomery No. 28852, 2021-Ohio-1426, supports this conclusion. In *Alltop,* the defendant failed to register on his required registration date of December 18, 2019, and on December 19, 2019 the Montgomery County Sheriff's Department sent the required seven-day notification letter. *Id.* at ¶4. The appellant did not receive the letter until January 7, 2020, and was arrested one hour later, nineteen days after he was required to register. *Id.* at ¶5. He was convicted of failure to register following a bench trial and appealed, arguing that his conviction was against the manifest weight of the evidence because an irregularity had occurred with the mailing of the letter and he did not receive it until an hour before he was arrested. *Id.* at ¶¶1,12. He

further argued that the statute intended that a defendant have the ability to receive the notice within seven days of mailing if at the same address as previously registered. *Id.* at ¶12. The court of appeals disagreed, holding:

> The language of R.C. 2950.06(G)(1) is clear: the sheriff must *send* a written warning to the offender on the day following that date required for the verification. There is no mention in the statute about the offender *receiving* the notification or being served, only that it must be sent. If the legislature intended service upon the offender to be the key, it could have used terms such as "the sheriff shall cause to be served," or "the offender will receive." As the State argues in its brief, following Alltop's theory would lead to absurd results. Under that construction, offenders who are not served, even if they purposely avoid it, could never be prosecuted, thus creating a loophole the legislature never intended. Based on the plain language of the statute, we conclude that the State must only send the warning letter and then wait seven days to comply and effectuate a failure to register prosecution.

(Italics original.) *Id.* at ¶13.

**{¶25}** In this case, the Department sent the warning letter to the appellant on the day after he failed to register, waited seven days for him to comply, and thereafter effectuated a failure to register prosecution. The Department complied with the statute. The appellant's first assignment of error is without merit, and is overruled.

**{¶26}** In his second assignment of error, the appellant argues that his equal protection rights were violated because the trial court refused to determine whether the

appellee's race-neutral reasons for dismissing the only African-American juror were merely a pretext for purposeful discrimination. We disagree.

**{¶27}** The use of peremptory challenge to dismiss a person of color from a jury venire was discussed by this Court in *State v. Jenkins,* 5ᵗʰ Dist. Stark No. 2008 CA 00191, 2009-Ohio-6254:

> When a party opposes a peremptory challenge by claiming racial discrimination, "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test." *Hicks v. Westinghouse Materials Co.,* supra, 78 Ohio St.3d at 99, 676 N.E.2d 872.

> In *Hicks,* supra, the Ohio Supreme Court set forth the *Batson* test as follows:

> "The United States Supreme Court set forth in *Batson,* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference

of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, *Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' *Id.* at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' *Id.* at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion on the basis of race. *Hernandez v. New York* (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409.78 Ohio St.3d. 98-9.

Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem* (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834. (per curiam); *Rice v. Collins* (2006), 546 U.S. 333, 126 S.Ct. 969, 973-74, 163 L.Ed.2d 824.

*Id.* at ¶¶48-51.

**{¶28}** In this case, the appellee argued that it sought to excuse Juror Number 7 as a potential juror because his reactions to voir dire questions, both to the jury pool in general and directly to other potential jurors, indicated that he would not be receptive to the appellee's arguments; that Juror Number 7 exhibited negative body language as the appellee laid out its case; and, that Juror Number 7's demeanor during both parties' questions indicated to the appellee that he did not want to be there and did not want to engage in the case.

**{¶29}** The appellee observed Juror Number 7's reactions and body language during the voir dire open forum, noting that he shook his head during counsel's interactions with another juror who said he was relieved that he did not have to participate in the trial, that he "didn't want to have to deliberate, and that he didn't want any part of that." The appellee presented comprehensible reasons for excusing Juror Number 7 that were not inherently discriminatory. The appellee's reasoning does not have to be persuasive, or even plausible, so long as it is not inherently discriminatory, and we cannot say that the appellee's reasoning was inherently discriminatory. Accordingly, the appellant's assignment number two is without merit, and is overruled.

{¶30} Based upon the foregoing, the decision of the Richland County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.